DAVID SELIGMAN (Colo. Bar No. 49394)
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Telephone: (720) 441-2236
david@towardsjustice.org
*Attorney for Respondents*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

O.P.E.N. America Inc.,
d/b/a OpenWorks;

    Petitioner,

v.

Ruth LLC;
Ruth Mark;

    Respondents.

No. 18-cv-03780-JAT

**OBJECTION TO PETITION TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C. § 4 AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)**
**(Oral Argument Requested)**

**A. Introduction**

Respondent Ruth Mark is a recent immigrant from Sudan who was employed as a commercial cleaner by Petitioner OpenWorks in Colorado until 2018. She is the plaintiff in litigation against OpenWorks in the District of Colorado, *Mark v. OpenWorks*, 18-cv-02412 (D. Colo.), where she alleges that OpenWorks recruited her to be a commercial cleaning worker with false promises of how successful she would be, *id.*, ECF Doc. 1 at ¶¶ 60-65 ("Compl."), and that instead of being classified as an employee of OpenWorks, she was told that she would have to form her own LLC and enter into a franchise agreement with the company. While OpenWorks continued to control Mark as it would control any employee—including, for example, preventing Mark from negotiating prices with OpenWorks clients

and limiting Mark's ability to choose when and where she worked, Compl. at ¶¶ 34-59—its franchise agreement with her allowed the company to charge Mark predatory franchise fees that it then financed for her through a series of installment loans, Compl. at ¶¶ 28-31.

Now, OpenWorks relies on a purported arbitration agreement in that same franchise agreement as the basis for a separate case in this Court brought as a petition to compel arbitration pursuant to 9 U.S.C. § 4, ECF Doc. 1 ("Petition"). The trouble is that the franchise agreement attached to the Petition containing the arbitration provision is nothing more than an offer. ECF Doc. 1-2 ("Agreement"). By the Agreement's own terms, the contract was never formed because it was not signed by OpenWorks.

Furthermore, even if the Agreement were completed, the arbitration provision is unenforceable. It purports to bind Ms. Mark to private arbitration in Arizona before an arbitrator hand-picked by OpenWorks at a cost of well over $10,000—a cost that she will be forced to bear on her own if she does not prevail, which seems likely considering that OpenWorks would be responsible for selecting the arbitrator. The provision also includes a shortened statute of limitations in violation of federal and state law and a waiver of Ms. Mark's right to seek punitive damages.

OpenWorks has already tried and failed to convince one federal court that this arbitration provision should prevent Ms. Mark from asserting her claims in court. In *Mark v. OpenWorks*, OpenWorks moved the district court in the District of Colorado to stay that litigation pending the resolution of the Petition. The court refused and instead ordered that that the litigation proceed to the merits of Ms. Mark's claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* Judge Jackson explained:

I will simply say that I am denying the motion to stay because I think there is a

> good likelihood that the arbitration clause will not be enforced by the federal court in Arizona. If I'm wrong, then fine, I'm wrong, but that's my prediction of what's likely to happen there. That is certainly what would happen here, and we'll wait and see.

Ex. A, *Mark v. OpenWorks*, 18-cv-02412 (D. Colo.), Oral Arg. & Scheduling Conf., Tr. at 8:6-11 (Jan. 8, 2019).

For all the reasons that Ms. Mark urged the court in Colorado to deny the motion to stay, this Court should deny this petition and allow Ms. Mark to have her claims heard in court in Colorado, where she lives and where she performed all her work for OpenWorks.

**B. OpenWorks Has Not Met Its Burden of Establishing a Formed Agreement between It and Mark**

As now-Justice Gorsuch clarified while writing for the Tenth Circuit,

> Everyone knows the Federal Arbitration Act favors arbitration. But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated. While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs.

*Howard v. Ferrellgas Partners*, 748 F.3d 975, 977 (10th Cir. 2014) (Gorsuch, J.).

In this case, Petitioner has not met its burden of establishing that the parties have entered into an agreement to arbitrate. By the terms of the purported agreement attached to the Petition, the "Agreement will not be binding on OpenWorks unless and until it has been signed by an authorized officer of OpenWorks." Agreement § 11.14. But the agreement submitted by OpenWorks in support of its Petition was not signed by OpenWorks. Instead, the agreement's signature page appears as follows:

3

> **FRANCHISOR:**
> O.P.E.N. AMERICA, INC.
> By:_____
> Officer:_____
>
> **FRANCHISEE:**
> Entity Name: Ruth Mark
> Signature: [signature]
> Printed Name: RUTH MARK
> Title: FRANCHISE OWNER
>
> Name: Ruth Mark
> Sign: [signature]
>
> Name:_____
> Sign:_____
>
> The above Franchise Agreement was executed on the date stated above, by the above named parties and in my presence as a witness.
>
> [signature] _____ residing at Denver , CO
> Name                              City        State

ECF Doc. 1-2 at 49.

On the Agreement's signature page, it appears that Plaintiff Ruth Mark signed the Agreement as a purported "FRANCHISEE." *Id.* In the space reserved for OpenWorks to execute the Agreement, however, there is no signature. *Id.* Someone—and it is not clear who—signed the Agreement as a witness, but that witness is not representing or purporting to represent OpenWorks.

A party need not sign an agreement to be bound by it, but where the terms of a contract expressly require that the parties assent to the agreement by signature, and the parties have not provided assent in that form, the contract is not effective. *Scaife v. Assoc. Air. Ctr. Inc.*, 100 F.3d 406, 411 (5th Cir. 1996); *Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo. Ct. App. 2014); *All State Home Mortg. v. Daniel*, 977 A.2d 438 (Md. Ct. Spec. App. 2009); *Byrd v. Simmons*, 5 So. 3d 384, 388 (Miss. 2009); *Union Interchange, Inc. v. Sierota*, 355 P.2d 1089, 1090-91 (Colo. 1960) ("If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract." (internal

quotation marks omitted)).[1] In this case, by the express terms of the contract, without OpenWorks's signature, there is nothing but an illusory, one-sided promise.

In the District of Colorado, OpenWorks argued that even if it had not signed the Agreement, the arbitration provision could still be binding on Ms. Mark. After all, the terms of the Agreement provide only that it will not be binding on **OpenWorks** until OpenWorks has signed. Agreement § 11.14. This argument fails as a matter of contract law. An agreement that binds one party and not the other is not a contract at all. A contract is formed when both parties have assented to be bound by it such that both parties can enforce it. CONTRACT, Black's Law Dictionary (10th ed. 2014) (A contract is "an agreement between two or more parties creating **obligations that are enforceable** or otherwise recognizable at law." (emphasis added)). This is so because the touchstone of contracting is mutuality, and "[m]utuality requires [that] all contracts … impose **upon each of the parties** a legal binding obligation which each can enforce against the other." *Hoppe v. Percheron Associates*, LLC, 11-CV-03233-CBS, 2012 WL 3135378, at *3 (D. Colo. Aug. 1, 2012) (internal citations and quotations omitted and emphasis added).

OpenWorks's signature does not appear on the contract that OpenWorks submitted to this Court in support of its petition to compel arbitration. That should end this matter. However, Ms. Mark acknowledges that OpenWorks claimed to be in possession of another

---

[1] Colorado law applies to the question of whether the parties entered into the contract because the contract was presented to Ms. Mark in Colorado, ECF Doc. 1-2 at 49, and the Arizona choice-of-law provision in the Agreement is not effective unless the parties entered into the Agreement. *See, e.g., Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2017). But even if Arizona law does apply, the analysis is the same. *See, e.g., Contempo Const. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 15 (Ariz. Ct. App. 1987) (acceptance requires "a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer" (internal quotation marks omitted)).

5

version of the Agreement with its signature in the Colorado litigation after Ms. Mark pointed out the lack of signature in the first version of the Agreement submitted in that case. *Mark v. OpenWorks*, 18-cv-02412 (D. Colo.), ECF Doc. 25-1 (filed on December 10, 2018). But in the three months since discovering this "new" version of the Agreement that purports to contain a signature from OpenWorks, OpenWorks has neglected to update the record here with an agreement containing OpenWorks's signature. OpenWorks should not be allowed to do so at this late date, and Respondents object to any attempt by Petitioner to submit a new version of the Agreement subsequent to this filing.

However, even if OpenWorks were permitted to submit that new version of the Agreement in support of this Petition, Respondents would at the very least be entitled to discovery and trial on the formation question. *See* 9 U.S.C. § 4. In the District of Colorado, OpenWorks acknowledged that its contracts with franchisees are kept in the same electronic database where it identified the version of the Agreement that does **not** include OpenWorks's signature. *Id.*, ECF Doc. 25-2 ¶¶ 5-7 ("I am familiar with the usual and customary business practices of OpenWorks as they relate to the storage of documents kept in the regular course of OpenWorks' business…. OpenWorks maintains copies of documents kept in the regular course of its business activities, like the Agreement, in OPS [elsewhere described as an electronic file storage system]…. I found a copy of an OpenWorks Janitorial Agreement dated September 12, 2016 in OPS. However, that copy was not signed by OpenWorks."). OpenWorks did not explain how a signed version of the Agreement could end up in a file cabinet when the version of the Agreement in the electronic database was unsigned.

The evidence at issue in the Colorado case raised further questions too. OpenWorks

also did not explain why a version of the agreement would exist that would include the witness's signature but not OpenWorks's. And, finally, OpenWorks did not explain **when** it signed the agreement. If, as is entirely possible, OpenWorks signed the agreement after Ms. Mark pointed out that OpenWorks had not signed the version of the agreement initially submitted in support of its motion to stay the litigation in the District of Colorado (and its Petition in this Court), then that signature was not effective. To the extent the Agreement attached to the motion to stay or the Petition here amounted to an open offer, Plaintiff carefully revoked that offer in her response to OpenWorks's motion to stay in Colorado. *See Mark v. OpenWorks*, 18-cv-02412 (D. Colo.), ECF Doc. 19 at 4 n.4.

Thus, even if OpenWorks is permitted to submit a new version of the Agreement that does contain its signature, that Agreement would at most create an issue of fact regarding the "making of the arbitration agreement," which, pursuant to 9 U.S.C. § 4, must be resolved by trial.[2]

**C. Even if the Agreement was Formed, It Is Exceptionally One-Sided and Unfair and Is Unenforceable as a Matter of State and Federal Law**

Even if the Agreement was formed, it is blatantly one-sided and unenforceable as a matter of a state and federal law.

1. <u>Legal Framework</u>

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Based on this provision, the Supreme Court has explained that when evaluating the enforceability of an agreement to arbitrate (1) courts must not treat

---

[2] Pursuant to 9 U.S.C. § 4, Respondents request a jury trial on any fact questions raised by OpenWorks's petition.

7

arbitration agreements with disfavor relative to other agreements, *see, e.g., DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (arbitration clauses must be placed on "equal footing with other contracts" (internal quotation marks omitted)), and (2) courts must not employ generally applicable laws or rules of decision to limit the contracting parties' "discretion in designing arbitration processes [that are] efficient [and] streamlined," *AT&T v. Concepcion*, 563 U.S. 333, 344 (2011).

The inverse of these propositions is equally central to federal arbitration law. Because arbitration is fundamentally a creature of contract, arbitration agreements may be defeated by the same defenses that are applicable to other contracts. *See, e.g., Capili v. Finish Line, Inc.,* 699 F. App'x 620, 622 (9th Cir. 2017); *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 377 (10th Cir. 2016). And while the FAA may insulate arbitration agreements designed to promote speedy, efficient, and fair dispute resolution, it provides no protection to agreements designed to impede these goals. *See, e.g., Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922-23 (9th Cir. 2013).

In this case, there are two relevant frameworks for evaluating the enforceability of the Agreement. The first is Arizona unconscionability law, applicable via the choice-of-law provision. Agreement § 11.2. Under Arizona law, an agreement may be substantively unconscionable if the contract terms are "so one-sided as to oppress or unfairly surprise an innocent party, [there is] an overall imbalance in the obligations and rights imposed by the bargain, [or there is a] significant cost-price disparity." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (1995);*Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013).

The second is the federal doctrine of effective vindication, which renders the Agreement unenforceable to the extent that it prevents Mark from effectively vindicating her

rights under the FLSA. *Nesbit*, 811 F.3d at 377; *Chavarria*, 733 F.3d at 927.

2. <u>Unenforceable Aspects of the Arbitration Agreement</u>

Under either of these frameworks, the Agreement is unenforceable for several reasons, including the following.

**Arbitrator-Selection Mechanism**: The Agreement includes a blatantly unconscionable arbitrator-selection mechanism, which is unenforceable as a matter of Arizona law. The Agreement provides that OpenWorks will have the ability to unilaterally select an arbitrator by handpicking a group of three potential arbitrators from which Ms. Mark may select one. Agreement §11.8.4. This term is harsh, one-sided, and substantively unconscionable. *Chavarria*, 733 F.3d at 925 (9th Cir.2013); *see also Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1258 (10th Cir. 2018); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 493 (6th Cir. 2004); *Gullett on behalf of Estate of Gullett v. Kindred Nursing Centers W., L.L.C.*, 390 P.3d 378, 385 (Ariz. Ct. App. 2017) (contrasting arbitrator selection provision in that case with provision like the one here and suggesting the latter would be unenforceable). The Ninth Circuit has struck down an almost identical term that arguably provided more protection for the non-drafting party by requiring that the three potential arbitrators proposed by the drafting party be "neutral." *Zaborowski v. MHN Gov't Services, Inc.*, 601 Fed. Appx. 461 (9th 2014) (affirming *Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1153 (N.D. Cal. 2013), which explains clause in more detail). This agreement does not even go that far.

**Cost-Shifting Provision:** Under the Agreement, "[a]ll expenses of arbitration must be paid by the party against whom the arbitrator renders a decision." Agreement § 11.8. In light of the extraordinary costs of arbitration and Ms. Mark's inability to pay those costs, that cost-shifting provision is unconscionable.

The costs of arbitration here would likely be well in excess of $10,000. Attached to this opposition is a declaration from an attorney and arbitrator in the Phoenix area declaring that the costs of arbitration in Arizona would likely be between $400-$550 per hour, excluding administrative and filing fees. Ex. B, Enoch Decl. at ¶ 11. This estimate is corroborated by a declaration from an Arizona arbitrator, prepared for a state court case in 2017, in which she states that she charges $500 per hour or $4,000 per day to conduct employment arbitrations, which she considers to be typical within the Phoenix area. Ex. C, Lieberman Decl. at ¶ 8. In this case, the parties have estimated that a trial solely on Mark's FLSA claims would last 5 days. *Mark v. OpenWorks*, No. 18-02412-RBJ (D. Colo.), ECF Doc. 32 (Scheduling Order) at 8. Considering a day of arbitrator prep, a day to draft an award, and two days to consider motions and preliminary matters, Ex. C, Lieberman Decl. at ¶ 9, the costs of such an arbitration would be approximately $36,000, excluding filing fees and other administrative costs.

Ms. Mark would not be able to afford anything near those costs. She and her family earn approximately $670 per week, and "[they] spend almost all of that on food and shelter for [her], [her] husband, and [their] two children—a boy who is nine and a girl who is six." Ex. D, Mark Decl. at ¶ 4 ("Mark Decl."). The estimated costs of arbitrator compensation in this case come to more than Ms. Mark's family earns in an ***entire year***. Nothing in the agreement purports to permit the arbitrator to take these considerations into account in reducing the costs that Ms. Mark would be forced to bear if she did not prevail in the arbitration.

The cost-shifting term is unconscionable as a matter of Arizona law. Under Arizona law, an arbitration agreement is unconscionable if considering the costs of arbitration, the

plaintiff's ability to pay, and whether the agreement allows for a waiver or reduction in fees or costs, the costs "effective[ly] preclude" the plaintiff from vindicating her rights. *Clark*, 307 P.3d at 81. The threat of costs exceeding Ms. Mark's annual income for a family of four meet that threshold. *See Williams v. Atlantic Specialty Ins. Co.*, No. 18-00061-TUC-DCB, 2018 WL 2046999 (D. Ariz. May 2, 2018) (finding arbitration costs unconscionable under Arizona law).

It makes no difference that Ms. Mark would not have to bear these costs if she prevailed. The tremendous costs of not prevailing, no matter how meritorious she believes her claim to be, would chill any person from asserting her rights, let alone someone without savings who relies on about $670 a week to support a family of four, including two young children. Furthermore, Arizona courts have explained that such loser-pays or cost-shifting provisions are unconscionable when they conflict with statutory protections like the FLSA which provide that plaintiffs should be awarded fees when they prevail, and not the other way around. *R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC*, 729 F. Supp. 2d 1110, 1117 (D. Ariz. 2010) ("Because the arbitration clauses at issue here require the arbitrator to award attorneys' fees to Defendants if they prevail, effectively nullifying the statutory protection provided to investors provided by Arizona's Securities Act, the arbitration clauses are substantively unconscionable."); *see also Newton v. Am. Debt Services, Inc.*, 549 Fed. Appx. 692, 694 (9th Cir. 2013); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010).

This provision is also unenforceable as a matter of federal law because it prevents Ms. Mark from effectively vindicating her federal rights. The FLSA provides a right for the employee to recover her fees and costs if she prevails in the action. 29 U.S.C. § 216(b). It is entirely antithetical to this scheme to require the plaintiff to pay perhaps many thousands of

dollars if she does not prevail. "[B]eing at the mercy of the arbitrator's discretion . . . is not the same as the protections of the FLSA." *Nesbitt v. FCNH, Inc.,* 811 F.3d 371, 378 (10th Cir. 2016).

**Venue-Selection Provision**: The venue selection provision, requiring Ms. Mark to arbitrate her disputes with OpenWorks in Arizona, Agreement § 11.8, is also unenforceable.

First, it prevents Ms. Mark from effectively vindicating her rights under the FLSA. Ms. Mark cannot afford even one trip to Arizona to testify in this matter, let alone the multiple trips she might have to take if she were to testify before one of the arbitrators selected from a group handpicked by OpenWorks. Agreement § 11.84. Nothing in the agreement purports to require or allow this arbitrator to permit Ms. Mark to participate in the arbitration proceedings telephonically.

Ms. Mark and her family effectively live hand to mouth. Mark Decl. ¶¶ 3-12. All her modest savings were drained by OpenWorks. *Id.* ¶11. And she and her family survive on the little work she and her husband are able to get. Until quite recently, they had trouble affording food. *Id.* ¶¶ 6-7. A trip to Arizona would require Ms. Mark to leave her two young children at home with her husband who would then have to cut back his hours driving for Uber, which would mean substantially less of the income her family needs to continue meeting their basic needs. *Id.* ¶ 10. She declares that if her husband does not work as an Uber driver, "we will be homeless." Id. Because she could not incur these costs, the venue selection provision prevents Ms. Mark from being able to pursue her FLSA claims. *Nesbitt*, 811 F.3d 371.

For similar reasons, the venue selection provision is also substantively unconscionable under Arizona law. Under Arizona law, a venue selection term is

unconscionable when it deprives the plaintiff of her day in court and is not consistent with her reasonable expectations. *Societe Jean Nicolas Et Fils v. Mousseux*, 597 P.2d 541, 543 (Ariz. 1979). For the reasons explained above, the venue-selection term presents much more than a hassle or some burdensome extra costs. Considering Ms. Mark's financial situation, it effectively deprives Ms. Mark of an opportunity to vindicate her rights. *See, e.g., Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1289–1290 (9th Cir. 2006) (en banc); *Bormann v. Waxie Enterprises, Inc.*, No. CIV09-264TUCFRZGEE, 2009 WL 6325693, at *4 (D. Ariz. July 8, 2009), report and recommendation adopted, 2010 WL 1346329 (D. Ariz. Mar. 31, 2010) ("The court concludes a person working in Tucson and making seven dollars per hour2 would be unable to pursue arbitration in San Diego. Arbitration in that city would require the claimant to take time off from work, travel to San Diego, and retain counsel qualified to practice in California. These costs would effectively prevent an employee from pursuing any claims that involved only modest damages."). Additionally, the term is inconsistent with Ms. Mark's reasonable expectations. Ms. Mark performed all her work in Colorado and interacted with the company in Colorado. She did not even know that OpenWorks was based in Arizona. Mark Decl. ¶ 16.

**Punitive Damages Waiver**: The agreement also forces Ms. Mark to waive her right to seek punitive damages that she may otherwise be entitled to. Agreement § 11.8. This provision is also unconscionable and unenforceable as a matter of state law. *Wernett v. Serv. Phoenix, L.L.C.*, 2009 WL 1955612 (D. Ariz. July 6, 2009) (arbitration clause prohibiting award of punitive damages, tort damages, or costs and attorney's fees held unconscionable); *see also Zaborowski v. MHN Gov't Services, Inc.,* 601 Fed. Appx. 461 (9th Cir. 2014) (arbitration clause which bans punitive damages substantively unconscionable); *Bridge Fund Capital Corp.*

13

*v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010) (arbitration clause prohibiting award of punitive damages held unconscionable); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003).

**Shortened Statute of Limitations**: The Agreement also shortens the applicable statutes of limitation for all claims to one year and establishes a pre-filing exhaustion requirement that requires the complaining party to serve a demand on the other party and then, within 90 days of such demand, to commence an arbitration proceeding. Agreement § 11.10. This agreement expressly defies the unwaivable statutory rights afforded Plaintiff by the FLSA, 29 U.S.C. § 255, and thus is unenforceable pursuant to the effective vindication doctrine. 811 F.3d at 377. "[F]ederal courts have routinely concluded that arbitration provisions shortening the limitations period to bring FLSA claims are unenforceable." *Reyes v. Gracefully, Inc.*, 2018 WL 2209486, at *7 (S.D.N.Y. May 11, 2018) (internal quotation marks omitted).

As applied to Plaintiff's state-law claims, the shortened period is unconscionable as a matter of state law because it is non-negotiated term beyond Ms. Mark's reasonable expectations. *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1031 (Ariz. Ct. App. 1992).

3. <u>These Terms Render the Arbitration Agreement Unenforceable</u>

The Court should decline to consider severing any of the unenforceable and unconscionable terms in this Agreement. At least five of the terms here are excessively harsh and one sided, suggesting that the arbitration scheme was designed not to provide the parties with an alternative dispute resolution mechanism but rather as an "inferior forum" that works to the drafting party's advantage. *Armendariz v. Found. Health Psychcare Services, Inc.*, 6

P.3d 669, 695-97 (Cal. 2000). Additionally, severing these unenforceable terms—terms that go to the selection of the arbitrators, where the arbitration should take place, who should bear the costs of the arbitration, what remedies are available in the arbitration, and when the arbitration must be brought—would require the Court to write a new arbitration provision thereby substituting the party's agreement with the Court's judgment. *Williams v. Atlantic Specialty Ins. Co.*, No. 18-00061-TUC-DCB, 2018 WL 2046999 at *6 (D. Ariz. May 2, 2018) (refusing to sever unconscionable terms). That would be contrary to state and federal law and inconsistent with the principle that arbitration is a creature of contract between the parties.

Finally, severance would create for drafting parties an incentive to pack their agreements with unconscionable and unenforceable terms knowing that those terms may chill claims and that at worst, the agreements will be enforced in their absence. Restatement (Second) of Contracts § 184 cmt. b (1981) ("[A] court will not aid a party who has taken advantage of his dominant bargaining power to extract from the other party a promise that is clearly so broad as to offend public policy by redrafting the agreement so as to make a part of the promise enforceable."). It is not difficult to draft an enforceable arbitration agreement. Courts should not remove the incentive to do so.

To be sure, the Agreement here includes a "severance" provision. Agreement § 11.12. But having this purported "Severability" clause is as good for OpenWorks's purposes here as having none at all. A true, mutual severance provision might allow the Court to exercise its discretion to sever some unenforceable terms and enforce the agreement in their absence. But that is not what this clause allows. This clause purports to allow OpenWorks and OpenWorks alone to decide whether any of the terms that have been taken out of the

agreement are so important to OpenWorks that it would rather vitiate the agreement entirely. Particularly considering the extreme one-sidedness of that provision, the Court should not give it weight in deciding the severance question.

### 4. Procedural Unconscionability

The substantive one-sidedness of the Agreement is enough to render it unconscionable and unenforceable as a matter of state law. But Arizona courts also recognize procedural unconscionability as an alternative basis for invalidating a contract. Procedural unconscionability "addresses the fairness of the bargaining process, which is concerned with unfair surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Clark*, 307 P.3d at 79.

The Agreement here includes multiple serious indications of procedural unconscionability. Ms. Mark is an immigrant from South Sudan who came to this Country in 2011. Mark Decl. ¶ 2. English is her second language. *Id.* ¶ 11. While she indicated her express assent to the Agreement, including its arbitration provision, that provision is part of an extensive form contract that exceeds 50 pages and includes many complex terms. OpenWorks presented the contract to Ms. Mark on a take-it-or-leave-it basis. Ms. Mark explains:

> Some of the words in the contract with OpenWorks are hard. The contract book was too much. When you are reading, you just read the words, but because it is too big, you can't really know them. Some of the words one cannot understand, especially when English is your second language. I never knew about the arbitration agreement. I didn't know that there were some jobs that have agreements about that. I didn't know what arbitration was when I signed the contract. The first time I heard about arbitration was when my lawyer explained it to me. I didn't know that word.

*Id.* at ¶ 14. And regarding the circumstances of contract formation, she recounts: "It would

take me 2 or 3 months to read that book and look up each thing, each word one by one. But I had to sign it quickly." *Id.* ¶ 17.

### D. The Court Should Dismiss this Action for Lack of Personal Jurisdiction Over Respondents

Finally, Petitioner provides no allegations that Plaintiff is present in the forum for general jurisdiction or that there are minimum contacts sufficient to establish specific jurisdiction. That leaves only the Arizona forum selection clause in the disputed Agreement to establish personal jurisdiction. *See S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007) ("the parties may consent to jurisdiction through a forum selection clause in a contract"). Because Respondents dispute the formation of the contract containing that forum selection clause, Respondents object to the Court's exercise of personal jurisdiction based on that forum selection clause and additionally move to dismiss the Petition pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

### E. Conclusion

For all of these reasons, the Court should deny the Petition.

DATED this 11th day of February, 2019.

Respectfully Submitted,

s/ *David H. Seligman*
David H. Seligman
Towards Justice
1410 High Street, Suite 300
Denver, CO 80218
Tel.: 720-248-8426
Fax: 303-957-2289
Email: david@towardsjustice.org

**Certificate of Service**

I hereby certify that on February 11, 2019 I served a true and correct copy of the forgoing on all parties that have appeared pursuant to Fed. R. Civ. P. 5 by filing the forgoing using the Court's CM/ECF electronic filing system.

            s/David H. Seligman
           David H. Seligman