**THORPE SHWER, P.C.**
William L. Thorpe (No. 005641)
André H. Merrett (No. 020889)
3200 North Central Avenue, Suite 1560
Phoenix, Arizona 85012-2441
Telephone: (602) 682-6100
Email: docket@thorpeshwer.com
Email: wthorpe@thorpeshwer.com
Email: amerrett@thorpeshwer.com

*Attorneys for Petitioner*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| O.P.E.N. America, Inc., d/b/a OpenWorks,<br><br>             Petitioner,<br><br>v.<br><br>Ruth, LLC, a Colorado limited liability company; and Ruth Mark, an individual,<br><br>             Respondents. | NO. 2:18-cv-03780-JAT<br><br>**PETITIONER'S REPLY IN SUPPORT OF ITS PETITION TO COMPEL ARBITRATION PURSUANT TO 9 U.S.C. § 4** |

Pursuant to this Court's May 5, 2019 Order [Dkt. 20] (the "Order"), Petitioner O.P.E.N. America, Inc., d/b/a OpenWorks ("OpenWorks") submits this reply in support of its Petition to Compel Arbitration Pursuant to 9 U.S.C. §4 (the "Petition") [Dkt. 1]. Preliminarily, OpenWorks would like to address the Court's concern regarding the filing of a reply in support of its Petition. OpenWorks in good faith believed that pursuant to §4 ("[i]f the making of the arbitration agreement…be in issue, the court shall proceed summarily to the trial thereof"), its Petition would proceed to a trial based upon the arguments raised in Respondents' Objection to Petition to Compel Arbitration Pursuant to 9 U.S.C. §4 ("Objection"). [Dkt. 14]. In compliance with the Order, OpenWorks submits its Reply, addressing the Objection's contract formation and unconscionability arguments.

**I.    THE PARTIES ENTERED INTO A VALID FRANCHISE AGREEMENT WITH AN ENFORCEABLE ARBITRATION PROVISION.**

Respondents argue that "by the express terms of the contract, without OpenWorks's signature, there is nothing but an illusory, one-sided promise." [Dkt. 14 at 5]. There has never been any dispute that Ms. Mark signed the franchise agreement (the "Agreement"). Moreover, Respondents knew by the time they filed the Objection on February 11, 2019 that OpenWorks had a copy of the fully-executed Agreement because it had been produced in the lawsuit Ms. Mark filed against OpenWorks in the District of Colorado captioned *Ruth Mark et al. v. O.P.E.N. America, Inc. d/b/a OpenWorks*; Civil Case No. 1:18-cv-02412-RBJ-NRN on September 20, 2018 (the "Colorado Litigation"). *See* 12-10-18 Declaration of Matt Alexander, Ex. C to OpenWorks' Reply in Support of its Motion to Stay in Colorado Litigation ("Colorado Reply"), attached hereto as **Ex. C,** and Declaration of Judy Anderson, Ex. D to Colorado Reply, attached hereto as **Ex. D**.[1]

OpenWorks executed the Agreement. *See* Declaration of Katrina Hughes (the "Hughes Declaration") attached hereto as **Ex. E** at ¶¶9-11. As Ms. Hughes' Declaration confirms, she witnessed Ms. Mark's execution of the Agreement in Denver, Colorado, on September 12, 2016. *Id.* at ¶5. After Ms. Mark executed the Agreement, Ms. Hughes sent

---

[1] Petitioner begins with **Ex. C** because Exs. A and B are attached to the original Petition.

1

it to OpenWorks' corporate office in Phoenix, Arizona, for execution by OpenWorks. *Id.* at ¶9. Thereafter, Julie McCollum, OpenWorks' Chief Financial Officer at the time, executed the Agreement on OpenWorks' behalf. *Id.* at ¶¶10,11. Thus, it cannot be disputed that both Ms. Mark and OpenWorks executed the Agreement.

Further, even if OpenWorks had not executed the Agreement, the Agreement is a contract and Respondents are bound by it. "The majority rule is that the contract must be signed by the party against whom it is sought to be enforced, but not by the party who seeks to enforce it . . . ." *Nationwide Resources Corp. v. Massabni*, 134 Ariz. 557, 562 (App. 1982). Additionally, the FAA "requires a writing, [but] does not require the writing be signed by the parties." *Nghiem v. NEC Elec.*, 25 F.3d 1437, 1439 (9th Cir. 1994). Proof that a party read an agreement and operated under its terms has been found sufficient to bind the parties to an arbitration provision. *See, e.g.*, *O'Bannon v. United Servs. Auto. Ass'n*, 2016 U.S. Dist. LEXIS 186581, at *6 (D. Ariz. June 17, 2016).

Here, several indisputable facts regarding Ms. Mark's conduct before, during and after the day she signed the Agreement (September 12, 2016) demonstrate that Ms. Mark read the Agreement and operated under its terms. *First*, Ms. Mark expressly acknowledged that OpenWorks provided her with a copy of the Agreement and all related documents (fully completed) at least five (5) business days prior to her execution of the Agreement. **Ex. E** at ¶8. *Second*, OpenWorks requires its franchisees to operate the franchises as legal entities as opposed to individuals. The Agreement required Ms. Mark to transfer her rights and obligations under the Agreement to an entity of which she beneficially owned 100% of the equity within 90 days after the Agreement's effective date (the "Required Assignment"). **Ex. E** at ¶4, Agreement at §1. On January 18, 2017, Ms. Mark, on her own behalf and on behalf of Ruth, LLC ("Ruth"), executed an Assignment of all Franchise Rights of Individual(s) to Their Entity (the "Assignment").[2] [Dkt. 1-2 at 257-262]. There, Ms. Mark assigned all of her rights as a franchisee under the Agreement to Ruth, a Colorado

---

[2] A true and correct copy of the Assignment is attached as Exhibit 3 to the Declaration of Katrina Hughes attached to OpenWorks's Petition. [Dkt. 1-2 at 257-262].

9093953

limited liability company, of which she is the sole member. *Id*. Ruth assumed and agreed to be bound by and perform all of Ms. Mark's obligations under the Agreement. *Id.* at §4. Ms. Mark agreed to remain fully obligated under the Agreement. *Id*. **It is undisputed that Ms. Mark, Ruth, and OpenWorks each signed the Assignment.** *Id*.

*Third*, Respondents performed under the Agreement as follows: (1) Respondents paid an initial start-up fee of $15,200 to OpenWorks, $10,200 of which was financed by OpenWorks to Ms. Mark and Ruth. [Dkt. 15-1, p. 8 at ¶10]; (2) Respondents paid OpenWorks fees and expenses related to such things as training and uniforms. *Id.* at ¶11; (3) Ms. Mark received extensive training from OpenWorks on its cleaning method. *Id.* at ¶12; (4) OpenWorks assigned Ms. Mark and/or Ruth commercial cleaning contracts. *Id*. at ¶14; (5) Ms. Mark and/or Ruth entered into several OpenWorks agreements (the "AdVols") that amended the Agreement to increase the volume of existing accounts or purchase of additional accounts, in exchange for fees secured by promissory notes. *Id*. at ¶16. The foregoing facts demonstrate that Respondents understood the Agreement and operated under its terms. The existence of a written, executed agreement between Respondents and OpenWorks cannot honestly be disputed.[3] As Respondents concede, if there is a dispute on this issue, it raises fact questions that must be resolved by trial. [Dkt. 14 at 7:12-16].

## II. THE AGREEMENT'S ARBITRATION PROVISION IS VALID AND ENFORCEABLE.

### A. The Arbitration Provision is Not Procedurally Unconscionable.

Respondents have not established that the Agreement was procedurally unconscionable.[4] Procedural unconscionability is concerned with matters such as unfair

---

[3] That the Agreement defines and governs the relationship between Ms. Mark and OpenWorks is unassailable. Taken to its logical conclusion, Respondents' argument that the parties never entered into the Agreement requires a determination that Ms. Mark lacked standing to assert any of the claims in the Colorado Litigation because each of the claims asserted in that litigation depend entirely upon the existence of a contractual relationship between Ms. Mark and OpenWorks.

[4] Although Respondents argue that the franchise agreement as a whole is procedurally unconscionable, [Dkt. 14 at 16], when evaluating whether to compel arbitration "a court cannot consider whether the contract as a whole is unconscionable. Instead, a court is limited to considering whether the arbitration clause in the agreement is unconscionable." *Jones v. GMC*, 640 F. Supp. 2d 1124, 1130 (D. Ariz. 2009). Thus, the Court's analysis

3

surprise, fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should. *See Jones v. Bank of Am., N.A.*, 2010 U.S. Dist. LEXIS 71848, *29 (D. Ariz. June 22, 2010). For example, courts consider whether the signor was pressured or deceived into signing the contract. *EEOC v. Cheesecake Factory, Inc.*, 2009 U.S. Dist. LEXIS 41883, at *7-9 (D. Ariz. 2009). Mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement, and an agreement may be enforceable even if the terms offered are not negotiable. *Id.* Respondents argue that procedural unconscionability arises here from the circumstances surrounding Ms. Mark's execution of the Agreement because Ms. Mark is an immigrant, English is Ms. Mark's second language, and because Paragraph 11.8 of the Agreement (the "Arbitration Provision") is part of a lengthy contract. However, Respondents fail to explain how any of these facts constitute procedural unconscionability. Notably, Respondents do **not** claim that they were unfairly surprised by the Arbitration Provision, that it was buried in fine print, or that they entered into the Agreement as a result of mistake or ignorance of important facts. Nor could they. Before executing the Agreement, Ms. Mark received OpenWorks's Franchise Disclosure Document (the "FDD"), [Dkt. 1-2 at 62-256], that advised her, in all capital letters, of the requirement to arbitrate in Arizona:

> **Please consider the following RISK FACTORS before you buy this franchise:**
>
> **THE FRANCHISE AGREEMENT REQUIRES YOU TO RESOLVE DISPUTES WITH US BY ARBITRATION ONLY IN ARIZONA. OUT-OF-STATE ARBITRATION MAY FORCE YOU TO ACCEPT A LESS FAVORABLE SETTLEMENT FOR DISPUTES. IT MAY ALSO COST YOU MORE TO ARBITRATE WITH US IN ARIZONA THAN IN YOUR OWN STATE . . .**

Thus, the provisions were not only visually distinct from other language in the contract, but they also explained the consequences in layman terms. The Agreement also provided:

> **11.8   Arbitration.** Any dispute or claim (a "Claim") arising out of or in connection with this Agreement shall be resolved by arbitration . . . The arbitration shall be held where our principal place of business is located, currently the City of Phoenix, Arizona . . ."

---

regarding procedural unconscionability should be limited to the arbitration provisions here.

4

1 These all-caps, bolded warnings preclude Respondents from making an argument that the terms of the agreement were hidden or an unfair surprise. *See Maxwell v. Fidelity Financial Services, Inc.,* 184 Ariz. 82, 87 (1995) (arbitration clause that is set off from the text, centered, bolded, and presented in all capital letters was not "hidden" or procedurally unconscionable); *Cheesecake Factory*, 2009 U.S. Dist. LEXIS 41883, at *7-9.

Additionally, Respondents cannot establish Ms. Marks was pressured or deceived into signing the Agreement. Contrary to Respondents' assertions, Ms. Mark was not under pressure to sign the Agreement "quickly." [Dkt. 14 at 17]. Ms. Mark received a copy of the FDD at least 14 days before she signed it. **Ex**. **E** at ¶6. Pursuant to 16 C.F.R. §436.2, Ms. Mark had a minimum 14-day "cooling off" period before she was allowed to sign a binding agreement or make any payment to OpenWorks. [Dkt. 1-2 at ¶8]. This period provided Ms. Mark with ample time to review the terms of the Agreement, seek legal or other counsel, and decide whether to sign the agreement. When she signed the Agreement, Ms. Mark certified to OpenWorks that she made an independent investigation of all important aspects of the franchise business and that she received and read the FDD before executing the Agreement. **Ex. E** at ¶4, Agreement at §11.19. These facts prevent Ms. Mark from arguing that the Agreement was procedurally unconscionable. *See Cheesecake Factory*, 2009 U.S. Dist. LEXIS 41883, at *7-9; (arbitration provision not unconscionable in part because no evidence of deception, pressure, or concealment); *see also Dueñas v. Life Care Ctrs. of Am.*, 236 Ariz. 130, 136 (App. 2014) (arbitration clause not unconscionable due to opportunity to review, exercise independent judgment).

Finally, even if the Agreement could be considered an adhesion contract (which it is not), it is still enforceable because it is consistent with reasonable expectations and not unduly oppressive. *See Cheesecake Factory*, 2009 U.S. Dist. LEXIS 41883, at *7-8. Respondents would not reasonably expect anything other than what was so clearly stated in the FDD—that disputes arising out of the Agreement would be arbitrated in Arizona, that out-of-state arbitration might result in a less favorable settlement, and that such arbitration might cost more than if it took place in Colorado.

5

9093953

### B.  The Arbitration Provision is not Substantively Unconscionable.

Substantive unconscionability is evaluated in the context of "the relative fairness of the obligations assumed," using the following factors: (1) whether the "contract terms are so one-sided as to oppress or unfairly surprise an innocent party"; (2) whether there is "an overall imbalance in the obligations and rights imposed by the bargain;" and (3) whether there is a "significant cost-price disparity." *See Jones,* 2010 U.S. Dist. LEXIS 71848, at *30; *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252 ¶39 (Ariz. App. 2017) (internal citations, quotations omitted). Here, Respondents complain that certain terms of the Arbitration Provision relating to the selection of arbitrators, costs, forum selection, punitive damages, and statute of limitations are substantively unconscionable. As discussed below, they are not. Further, even if the Court were to find certain terms of the Arbitration Provision unenforceable, those terms could be easily severed from the remaining enforceable provisions.

#### 1.  The Method of Arbitrator Selection is Not Unconscionable.

With respect to the selection of arbitrators, the Agreement provides:

> 11.8.4 Designation of Arbitrator. The Claim shall be decided by a single arbitrator determined as follows: OpenWorks shall propose 3 candidates to you and you must choose the arbitrator within 10 days after the date of OpenWorks' proposal. Upon determination, the arbitrator shall commence the arbitration process. The arbitrator shall make an award of the Initial Resolution or the Second Resolution or such other award as the arbitrator decides is just under the facts and applicable law, subject to the terms of this Agreement.

**Ex. E** at ¶4, Agreement at §11.8.4. Contrary to Respondent's assertion that the agreement does not provide that the arbitrators would be neutral [Dkt. 14 at 9], the Arbitration Provision guarantees that the arbitration shall be "conducted by one or more independent arbitrators who are experienced in franchise matters and ***have no past or present relationship with either party***…." **Ex. E** at ¶4, Agreement at §11.8 (emphasis added). Respondents imply that the arbitrator selection provision injects unfairness into the arbitration proceeding by allowing OpenWorks to select a favorably biased arbitrator. [Dkt.

6

9093953

14 at 9]. OpenWorks, however, does not have the "ability to unilaterally select a[] [handpicked] arbitrator." *Id.* Section 11.8.4 makes clear Respondents will ultimately select the arbitrator. That OpenWorks is entitled to initially propose the slate of neutral arbitrators with franchise experience does not render the Arbitration Provision unconscionable.

Respondents rely on *Gullett v. Kindred Nursing Ctrs. West, LLC*, 390 P.3d 378, 384 ¶18 (Ariz. App. 2017) to argue that an Arizona court would not uphold an arbitrator selection provision such as the one here. The *Gullett* court's focus was on terms "terms that by themselves create a partial forum would be similarly unconscionable for failure to provide a person with the ability to effectively vindicate their rights before a neutral arbitrator." *Id.* In this case, there is an express provision to protect the neutrality of the arbitrator.[5] Therefore, the process is "designed to produce a true neutral."[6] Nothing in the Arbitration Provision regarding arbitrators can reasonably be characterized as unfair.

### 2. The Cost Allocation of the Arbitration Provision is Not Substantively Unconscionable.

The Arbitration Provision entitles the prevailing party to have all of its arbitration expenses paid by the unsuccessful party. **Ex. E** at ¶4, Agreement at §11.8 ("All expenses of arbitration must be paid by the party against whom the arbitrator renders a decision."). "A party seeking to invalidate an arbitration agreement because it would be too expensive bears the burden of showing the likelihood of incurring prohibitive arbitration costs."

---

[5] In the case upon which *Gullett* mainly relies, *McMullen v. Meijer, Inc.*, 355 F.3d 485 (6th Cir. 2004), the pool of potential arbitrators was selected by one side and then that side still could strike two names. *Id.* at 488. Here, Respondents select the arbitrator from a list of three and OpenWorks has no additional input after providing Respondents with a list of neutral arbitrators proposed by OpenWorks on the exclusive basis of having experience in franchise matters. **Ex. E** at ¶4, Agreement at §11.8.

[6] Respondents' cited cases of *Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916, 923 (9th Cir. 2013)*, Beltran v. AuPairCare, Inc.*, 907 F.3d 1240 (10th Cir. 2018), *Zaborowski v. MHN Gov't Servs.*, 601 Fed. Appx. 461 (9th Cir. 2014), *Newton v. Am. Debt Servs., Inc.*, 549 Fed. Appx 692, 694 (9th Cir. 2013), *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010), and *Armendariz v. Found. Health Psychare Services, Inc.*, 6 P.3d 669 (Cal. 2000) all rely on California law. California, however, is "more hostile" to arbitration agreements than other states. *See Bridge Fund Capital Corp. v. Fastbucks Franchise Cop.*, 622 F.3d 996, 1003 (9th Cir. 2010) (observing California law "is more hostile" to arbitration agreements than Texas); *Jones*, 640 F. Supp. 2d at 1133 ("Like Texas (and the federal government), Arizona has a strong policy of favoring arbitration agreements.").

7

*Pettibone v. Chapman Auto. Group*, 2011 U.S. Dist. LEXIS 132051 at *5 (D. Ariz. Nov. 15, 2011). Sheer speculation is insufficient. *Id.* at *6. Here, Ms. Mark has articulated only a speculative risk that one or both of Respondents may incur prohibitive arbitration costs—far from the requisite "specific facts showing with reasonable certainty the likely costs of arbitration." *Clark v. Renaissance West, LLC*, 232 Ariz. 510, 513 ¶10 (App. 2013). The declaration of Mr. Enoch is insufficient to demonstrate the likelihood that Respondents would incur five figures of arbitration costs. [Dkt. 14-2]. First, Mr. Enoch's declaration is not tailored to the specifics of this case. *Id.* Second, he seems to presume the imposition of administrative fees charged by an organization conducting the arbitration and/or the use of more than one arbitrator—circumstances not present here.[7] *Id.* at ¶¶11, 12. Ms. Lieberman's declaration is similarly lacking in specifics related to this case. [Dkt. 14-3]. Further, while Ms. Mark's declaration [Dkt. 14-4] addresses her personal finances, Ruth failed to submit a similar declaration. In any event, while it is possible that the arbitrator could order one or both of the Respondents to pay the costs, it is also possible that the arbitrator could order OpenWorks to pay the costs to Respondents if they prevail.

Respondents' Objection relies on cases involving situations not pertinent here. For example, in *Capili v. Finish Line, Inc.*, the arbitration provision required a retail employee "to pay up to $10,000 at the outset of arbitration, not including the fees and costs for legal representation." 699 Fed. App'x 620, 622 (9th Cir. 2017). There is no such upfront cost required of Respondents. In *Chavarria*, the arbitrator was required to apportion costs "at the outset of the arbitration proceedings" "regardless of the merits of the claim." 733 F.3d at 923. Here, arbitration fees are awarded to the prevailing party at the end.

---

[7] Whether arbitration is prohibitively expensive is a question of fact, highly dependent upon the specific circumstances of each case. *Harrington,* 211 Ariz. at 252. For this reason, Respondents' reliance on decisions like *Williams v. Atlantic Specialty Ins. Co.*, 2018 U.S. Dist. LEXIS 74291, *4 (D. Ariz. 2018) and *Nesbit v. FCNH, Inc.*, 811 F. 3d 374 (10th Cir. 2016) is misplaced. [Dkt. 14 at 11-12]. These cases are distinguishable because the arbitration agreements in those cases provided for arbitration with the American Arbitration Association, which, along with its rules, structure, and administrative services, imposes an arguably more significant financial burden on the parties than does private arbitration pursuant to the Agreement's Arbitration Provision.

Further, Respondents argue a prevailing party fee-shifting provision is inappropriate in instances where there are statutory provisions providing for a one-way fee award. In doing so they rely on *R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC*, 729 F. Supp. 2d 1110, 1117 (D. Ariz. 2010). *R & L*, however, is not on all fours with the situation here. In the Colorado Litigation, Ms. Mark has filed a contract-based breach of the covenant of good faith and fair dealing claim in Count VI in her Complaint. [Colorado Litigation, Dkt. 1 at ¶124]. This claim triggers not only A.R.S. §12-341.01 but also §11.11[8] of the Agreement (separate from the Arbitration Provision), making fee-shifting non-discretionary.[9] There was no such contract-based claim in *R & L*.

### 3. The Forum Selection Clause is Not Substantively Unconscionable.

Ms. Mark assails the Arbitration Provision's forum selection clause, claiming that (1) it prevents her from effectively vindicating her rights under the FLSA because arbitrating in Arizona is cost prohibitive; and (2) arbitration in Arizona is inconsistent with her reasonable expectations. [Dkt. 14 at 12-13]. A party arguing the unenforceability of a forum selection clause bears a heavy burden. *Petersen v. Boeing Co.*, 108 F. Supp. 3d 726, 729 (D. Ariz. 2015). To avoid enforcement of a forum selection clause on hardship grounds, the party challenging the clause must show that trial in the contractual forum is so gravely difficult and inconvenient that the party will for all practical purposes be deprived of his day in court. *Ziya v. Global Logistics Solutions, LLC*, 2011 U.S. Dist. LEXIS 133682, *5-6 (D. Ariz. 2011). Ms. Mark claims to not be able to travel out-of-state under any

---

[8] This provision states that "[i]f legal action , including any action on appeal, or arbitration is initiated to enforce the terms and conditions of this Agreement, the prevailing party will be entitled to recover reasonable compensation for preparation, investigation and court and/or arbitration costs (including but not limited to, expert witness fees, hearing transcript fees, arbitration fees, arbitrator's compensation, copying costs, delivery expenses and charges) and reasonably attorneys' fees, as fixed by a court of competent jurisdiction or by the arbitrator." **Ex. E** at ¶4, Agreement at §11.11.

[9] When a contract contains a mandatory fee provision for the prevailing party, as §11.11 of the Agreement does, the discretionary nature of A.R.S. §12-341.01 ceases. See *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 378 ¶26 (Ariz. App. 2001) ("The awarding of attorneys' fees to a prevailing party pursuant to a contract between the parties is mandatory."); *McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 256, 269 ¶14 (App. 2007) (same); *Chase Bank of Ariz. v. Acosta*, 179 Ariz. 563, 575 (App. 1994) (same).

circumstances. [Dkt. 14-4]. Surely that cannot be a barometer by which to judge contractual venue selection. Finally, as for Ruth, it makes no argument whatsoever that it would be denied its day in court if required to comply with the parties' forum selection clause.

Regarding reasonable expectations, Respondents cannot show they would not have entered into the Agreement had they known the clause was present. *Harrington,* 211 Ariz. at 249. For the reasons stated previously, there can be no doubt here that Respondents knew of and agreed to the forum selection clause when they entered into the Agreement and the Required Assignment. *See* Section II(A), *supra*. No Respondent can truthfully represent to this Court that they would not have entered into the Agreement had they known of the forum selection clause. At best, Respondents' arguments only raise triable fact issues on their reasonable expectations in light of the disclosures they admit were made to them.

### 4. Neither the Punitive Damages Waiver nor the Shortened Statute of Limitations Provision is Substantively Unconscionable.

The majority of cases Respondents rely on to support their argument that the waiver of punitive damages and the shortened statute of limitations clauses here are unconscionable are based upon the existence of an employer-employee relationship. [Dkt. 14 at 13-14]. An employer-employee relationship is not present here. *First*, the Agreement expressly disclaims an employment relationship. **Ex. E** at ¶4, Agreement at §8.2 ("You may not expressly or impliedly hold yourself out as an employee, partner, shareholder, joint venture, representative or general agent of OpenWorks…."). *Second*, the Agreement contains an Arizona choice of law provision. *Id.* at §11.2 ("[T]his Agreement and all matters relating to it, shall be governed by and interpreted by the laws of the State of Arizona…."). Arizona law expressly provides that in the context of a franchise relationship, "[a] franchisor is not an employer or co-employer of either a franchisee or an employee of the franchisee, unless the franchisor agrees, in writing, to assume the role of employer or co-employer of the franchisee of the employee of the franchisee." A.R.S. §23-1604(A)(1). Therefore, the Objection is devoid of binding or compelling arguments supporting the unconscionability of the punitive damages waiver or the shortened statute of limitations

provision, particularly because if Ms. Mark is not an employee, she does not have a claim under the FLSA. As for Ms. Mark's reasonable expectations, *see* Section II(A), *supra*.[10]

### C. The Court Can Still Enforce the Arbitration Provision Even if It Finds One of its Terms to Be Unconscionable.

The Arbitration Provision's terms are not unconscionable. However, if the Court were inclined to find one of these terms unconscionable and thus unenforceable, then it should sever that term and enforce the remainder of the Arbitration Provision. "If it is clear from its terms that a contract was intended to be severable, the court can enforce the lawful part and ignore the unlawful part." *Olliver/Pilcher Ins. v. Danies*, 148 Ariz. 530, 533 (1986). Arizona courts have applied this doctrine to arbitration agreements. *See, e.g., Boormann v. Waxie Enter.,* 2009 U.S. Dist. LEXIS 126352 *11-12 (D. Ariz. 2009) (compelling arbitration after severing certain provisions because the law favors arbitration agreements). Respondents and OpenWorks agreed that the terms of the Arbitration Provision are severable and the invalidity of any term would not impair the operation of any other term. **Ex. E** at ¶4, Agreement at §11.12. Severing certain clauses of the Arbitration Provision, if necessary, would ensure that the majority of the parties' bargain remained and would be completely in keeping with and in the spirit of federal and Arizona policy favoring arbitration agreements.

### III. CONCLUSION.

For all the reasons set forth in OpenWorks's Petition [Dkt. 1] and herein, OpenWorks respectfully requests that the Court enter an order compelling Respondents to arbitrate all claims in the Colorado Litigation and any other claims that arise out of or in connection with the Agreement in accordance with the Arbitration Provision. At a minimum, the Court should set this matter for trial under §4 of the FAA to address the disputed factual matters raised by Respondents' Objection and this Reply.

---

[10] Moreover, Ms. Mark should have been aware of the potential for a one year statute of limitation because that term applies to her consumer fraud claim [Colorado Litigation, Dkt. 1 at ¶¶110-113]. *See Murry v. W. Am. Mortgage Co.*, 124 Ariz. 387, 390 (App. 1979).

11

9093953

1    DATED this 20th day of May, 2019.

2                                         THORPE SHWER, P.C.

4                                         By */s/ William L. Thorpe*
                                             William L. Thorpe
                                             André H. Merrett
5                                            *Attorneys for Petitioner*

12

9093953

# CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2019, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I further certify that on May 20, 2019, I served by U.S. Mail, the attached document to the following:

David H. Seligman<br>
Towards Justice<br>
1410 High Street, Suite 300<br>
Denver, Colorado 80218<br>
<b>Attorneys for Respondents</b>

                    */s/ Joan Peralta*